```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA

                         ATLANTA DIVISION


UNITED STATES OF AMERICA      )
                              )
     vs.                      )     Criminal Action No.
                              )
RODNEY RICHARDSON             )     1:04-CR-67-CC-ECS
_____)
```

### MR. RICHARDSON'S APPEAL OF THE MAGISTRATE ORDER RE: PROBABLE CAUSE AND CONSTITUTIONALITY OF 41 C.F.R. §102-74.390

COMES NOW the defendant, Mr. Rodney Richardson, by and through undersigned counsel and moves this Court to reverse the order entered on November 18th, 2004 by the honorable Magistrate Judge E. Clayton Scofield. Mr. Richardson submits that the order should be reversed because of a lack of probable cause and because the 41 C.F.R. § 102-74.390 is unconstitutionally vague and overbroad.

### Statement of Facts

At around 4:30 p.m. on February 9, 2004, Mr. Rodney Richardson approached the Richard B. Russell Building and attempted to enter through the back entrance, at the loading dock. (Tr. at 36-37, 68, 94). Upon arriving at the checkpoint area, Court Security Officer Thomas Moore (hereafter "Officer Moore") asked Mr. Richardson to produce photographic identification. (Tr. at 68). Mr. Richardson informed Officer Moore that he could not produce identification because he did not have any. (Tr. at 95). Officer Moore told Mr. Richardson that if he did not have any identification that he could sign his name to a visitor's log and be permitted to enter the

building. (Tr. at 70). Mr. Richardson was about to sign the log, when Officer Moore informed him that he would need to supply information in addition to his name. (Tr. at 97-98). Mr. Richardson did not wish to surrender that information. (Tr. at 70). At that point, Officer Moore called his supervisor for assistance. (Tr. at 71). Officer Moore's On-site Supervisor and Senior Lead Supervisor came to the checkpoint and re-explained their procedures to Mr. Richardson. (Tr. at 72). Mr. Richardson explained that he had been through this situation before and that it had been resolved previously. (Tr. at 96). The Federal Protection Service was then notified. (Tr. at 72). At no time during this interaction were there people behind Mr. Richardson other than Mr. Stanley Sawyer, who had come to the building with Mr. Richardson. (Tr. at 78, 94).

Federal Officers Lane, Rowbuti and Shearman responded to the call. (Tr. at 10). Officer Lane asked Mr. Richardson to get his bags and leave the building. (Tr. at 11). The record is unclear as to whether Mr. Richardson left immediately after being asked, (Tr. at 98), or whether he was asked to leave more than once before doing so. (Tr. at 13). However, the record is unmistakably clear that Mr. Richardson did comply with the order to leave the building. (Tr. at 47). While walking away from the building, an officer at a guard shack, (located near the exit of the loading dock) asked Mr. Richardson a question. (Tr. at 98). Mr.

Richardson stopped to answer the officer. (Tr. at 98). Seeing this, Officers Lane, Butawi and Shearman approached Mr. Richardson and reminded him that he had been instructed to leave the premises. (Tr. at 42). Mr. Richardson immediately resumed his departure of the area. (Tr. at 42). At that point, Officer Shearman recognized Mr. Richardson as someone he had encountered on other occasions at other federal buildings. (Tr. at 43). The officers then followed Mr. Richardson, stopped him on Alabama Street, and demanded his identity. (Tr. at 27, 44). Mr. Richardson refused. (Tr. at 44). Officer Shearman asked Mr. Richardson to remove his bag from his shoulder. (Tr. at 44). Mr. Richardson refused. (Tr. at 44). When the officers attempted to remove the bag, Mr. Richardson jerked the bag away and turned his back to the officers. (Tr. at 45). The officers interpreted this action as "aggressive" and arrested him. (Tr. at 45). They searched the bag and found, among other things, legal documents with his name on them. (Tr. at 45). Officer Shearman then asked Mr. Richardson if his name was Rodney Richardson, and Mr. Richardson confirmed the fact. (Tr. at 45).

<u>Legal Argument and Authority</u>

I. <u>THE MAGISTRATE COURT ERRED IN FINDING THAT THERE WAS PROBABLE CAUSE FOR ARREST BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A REASONABLE BELIEF THAT MR. RICHARDSON WAS COMMITTING A CRIME</u>.

Probable cause to arrest a suspect exists when a law enforcement officer has facts and circumstances sufficient to warrant a reasonable belief that the suspect was committing a crime. <u>Beck v. Ohio</u>, 379 U.S. 89 (1964); <u>United States v. Diaz-Lizaraza</u>, 981 F.2d 1216 (11th Cir. 1993). This Court must examine the totality of circumstances, from an objective perspective, to determine whether probable cause existed at the time of Mr. Richardson's arrest. <u>Craig v. Singletary</u>, 127 F.3d 1030(11th Cir. 1997).

  A. <u>Officer Shearman Did Not Have Probable Cause To Arrest Mr. Richardson For Failing To Comply With Directions Because Mr. Richardson Was Arrested While Attempting To Comply With The Direction To Leave The Premises</u>.

In the case at bar, it is unclear whether Mr. Richardson complied with the order to vacate the property the very first time

4

he was asked. However, it is unmistakably clear that Mr. Richardson did in fact comply with the officers instruction to leave the building. The only reason Mr. Richardson did not vacate the area promptly after being turned away from the checkpoint area was because he stopped to answer a question asked by another officer, and because he was stopped and ordered to identify himself by Officers Shearman, Lane and Butawi.

In fact, the only reasons Mr. Richardson did not comply fully with the instruction to leave are attributable to other instructions from officers. Accordingly, the circumstances indicate that Mr. Richardson complied with directions as he received them.

Nor can it be that Mr. Richardson failed to comply with directions by refusing Officer Shearman's order to identify himself. 41 C.F.R. § 102-74.385 provides that persons on federal property "persons must at all times comply ... <u>with the lawful direction</u> of Federal police officers and other authorized individuals." (Emphasis added). Once Mr Richardson had departed the Russell Building, there was no constitutional or statutory basis for requiring Mr. Richardson to identify himself. Therefore, Mr. Richardson could not have violated § 102-74.385 by refusing to identify himself, because the order to do so was not a lawful one.

Accordingly, the Magistrate Court's finding that it was reasonable to believe that Mr. Richardson had failed to comply with

directions from a Federal officer was erroneous.  He did in fact comply with all directions issued by Officers.  In the one instance he did not, Mr. Richardson was not so obligated.

>     II.     THE MAGISTRATE COURT ERRED IN RULING THAT 41 C.F.R. §102-74.390 IS CONSTITUTIONAL BECAUSE THE STATUTE IS IMPERMISSIBLY VAGUE.

The United States Supreme Court has held that "... a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits ..."  Giacco v. Pennsylvania, 382 U.S. 399, 402-03 (1966).  A statute will be deemed unconstitutionally vague if it fails to provide adequate notice that enables ordinary people to understand what conduct it prohibits and if it authorizes and encourages arbitrary, discriminatory enforcement. Koleander v. Lawson, 461 U.S. 352, 357 (1983).  The Court has explained that no person "... may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).

>          A.    The Magistrate Court Erred In Ruling That 41 C.F.R. § 102-74.390 Is Constitutional Because The Statute Fails To Inform Ordinary Citizens What Conduct Is Prohibited.

As stated above, a statute is unconstitutional if it is so

vague as to "... fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits ..." City of Chicago v. Morales, 527 U.S. 41, 56 (1999).  In Morales, the Supreme Court invalidated a statute which prohibited a gang member from loitering with one or more persons "with no apparent purpose."  If an officer encountered a suspected gang member loitering in such a fashion, she is permitted to order the group to disperse.  Failing to do so carried a punishment of up to six months in prison. Id. at 44.

The Court concluded that the statute failed to provide ordinary persons with adequate notice of what particular conduct was prohibited:  "... the vagueness that dooms this ordinance is not the product of uncertainty about the meaning of 'loitering', but rather about what loitering is covered by the ordinance and what is not." Id. at 57.  The statute simply did not identify conduct which distinguished innocent from criminal loitering.  In reaching this conclusion, the Court observed its difficulty in imagining how any citizen standing in a public place in Chicago could have any idea whether he or she had an apparent purpose. Id. at 56-57.

In Horton v. City of St. Augustine, 272 F.3d 1318, 1331 (11th Cir. 2001), the Eleventh Circuit held that "perform", as used within a ordinance prohibiting street performance in a certain area of the city, was not unconstitutionally vague.  There, the statute

at issue provided a non-exclusive list of no less than eight activities which constituted performance, and applied the prohibition to a clearly defined four-block area of the city.

In contrast to <u>Horton</u> and in the same fashion as <u>Morales</u>, 41 C.F.R. § 102-74.390 is unconstitutionally vague because it does not permit an ordinary citizen to understand which loitering is permissible and which loitering is in fact criminal. 41 C.F.R. § 102-74.390 states that:

> All person entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property which: (a) creates loud or unusual noise or nuisance; (b) unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; (c) otherwise impedes or disrupts official duties by Government employees; or (d) prevents the general public from obtaining the administrative services provided on the property in a timely manner.

At the outset, the basic conduct at issue in the statute, "loitering" and "disorderly conduct" is not defined in the statute. Webster's New World Dictionary (4th Ed. 2001) defines the term "loiter" as "to linger in an aimless way; spend time idly." This extends to a substantial amount of innocent conduct. For example, family members waiting for a jury verdict, as they often do inside the Russell building, could be found "loitering" in violation of the statute. Attorneys engaged in a lively debate over the constitutionality of a statute after court could be found guilty of loitering. And, because this statute does not have a mens rea

element, no criminal intent need be proven to punish an individual pursuant to this statute. The Supreme Court has in the past voiced its concern over such a situation. See Colautti v. Franklin, 439 U.S. 379 (1979); Screws v. United States, 325 U.S. 91, 101-02 (1945) (Douglas, J., concurring) (observing that requirement that an act be willful relieves the objection that a statute punished without warning).

Furthermore, it is difficult to imagine how an ordinary citizen sitting in a federal building lobby would have any idea a noise she was making was "unusual", in violation of subsection (a). The term defies definition relative to any objective standard. Nor, by the terms of the statute, would a citizen be capable of understanding where her obstruction of entrances advances from permissibly reasonable to impermissibly unreasonable, in violation of (b).

This is not a case such as Horton, where an ambiguous and relative term is fleshed out by a list of examples.[1] Rather, this situation is analogous to the one in Morales, where a citizen is left wondering how she might even know if she is violating the statute. Thus this ordinance is vague "not in the sense that it requires a person to conform his conduct to an imprecise but

---

[1] One can easily imagine such a list for either ambiguity. An "unusual" noise might be defined as one of high pitch, or of a repetitive character. An "unreasonable" obstruction might be defined as one without purpose, or one causing delay for more than thirty seconds.

9

comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Morales, 527 U.S. at 60 (quoting Coates v. Cincinnati, 402 U.S. 611, 614 (1971)). As such, the statute is impermissibly vague and should, as in Morales, be struck as unconstitutional.

> B.  The Magistrate Court Erred in Ruling That 41 C.F.R. § 102-74.390 Is Constitutional Because The Statute Fails To Establish Minimal Guidelines To Govern Law Enforcement.

As stated above, a statute can also be unconstitutionally vague if it authorizes arbitrary and discriminatory enforcement by law enforcement officers. Morales, 527 U.S. at 56. Such a statute violates "the requirement that a legislature establish minimal guidelines to govern law enforcement." Id. at 60 (quoting Koleander, 461 U.S. at 358).

In Morales, the Supreme Court held that without guidelines in the ordinance to direct the conduct of law enforcement officers, the statute failed "to meet constitutional standards for definiteness and clarity." Morales, at 63 (quoting the Illinois Supreme Court, 177 Ill 2d 440, 459 (1997)). The police enjoyed absolute discretion as the "no apparent purpose" standard "is inherently subjective because its application depends on whether

some purpose is 'apparent' to the officer on the scene." Id. at 62.

In Koleander v. Lawson, 461 U.S. 352, the Supreme Court invalidated a statute which prohibited wandering the streets and refusing to identify and explain one's business if asked by law enforcement.[2] There, a California court had construed the statute as requiring an individual stopped under this statute to provide "credible and reliable" identification. The statute did not establish guidelines concerning what would constitute "credible and reliable" identification, and thus allowed "policemen, prosecutors and juries to pursue personal predilections." Id. at 358 (citations omitted). The statute permitted too much discretion because "[a]n individual ... is entitled to continue to walk the public streets only at the whim of any police officer ..." Id. at 359 (citations and internal quotations omitted).

41 C.F.R. § 102-74.390 provides the same unfettered discretion to police officers as the statutes in Morales and Koleander. No minimal standards for conduct are provided in the statute. Moreover, the statute includes subjective terms, such as the "apparent purpose" standard of Morales. The application of an "unusual" noise standard, or an "unreasonable" obstruction standard depends entirely on whether some noise is "unusual" to a particular officer, or whether some obstruction is "unreasonable" to that

---

[2] California Penal Code Ann. §647(e) (West 1970).

officer.  The consequence of such completely subjective standards is that an individual is permitted to enter or remain in the Richard B. Russell building only at the whim of every federal police officer present.  Consequently, the statute provides absolute discretion to law enforcement and is thus unconstitutionally vague.

> III. THE MAGISTRATE COURT ERRED IN FINDING 41 C.F.R. § 102-74.390 CONSTITUTIONAL BECAUSE IT IS IMPERMISSIBLY OVERBROAD IN VIOLATION OF THE FIRST AMENDMENT.

The United States Supreme Court has also held that a statute which reaches a substantial amount of constitutionally-protected conduct must be invalidated.  New York v. Ferber, 458 U.S. 747, 769 (1982).  "Criminal statutes ... that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application."  Koleander, 461 U.S. at 359.  "A legislative enactment may be constitutionally overbroad when lawmakers define the scope of the statute to reach both unprotected expression as well as, at least potentially, protected speech."  Horton, supra, 272 F. 3d at 1331 (citations omitted).  And speech which may be considered provocative or challenging is nevertheless protected against punishment, unless it is likely to produce a "clear and present danger" of a serious nature that constitutes more than simply an inconvenience to the

public.  Terminello v. Chicago, 337 U.S. 1 (1949).

In City of Houston v. Hill, 482 U.S. 451 (1987), the Supreme Court invalidated a law which prohibited "any person to ... in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty," observing that this language includes verbal interruptions of police officers.  482 U.S. 451, 461 (1987).  In doing so, the
Court distinguished the situation where verbal interruptions consisting of fighting words or obscenity were prohibited, and reminded the litigants that it has "repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."  Id. at 464.

In the case at bar, the "loud or unusual" provision impermissibly extends to cover an argument over politics or religion.  It may be true that the lobby of a courthouse is not a traditional public place for the presentation of views.  See e.g. Braun v. Baldwin, 346 F.3d 761 (7th Cir. 2003).  However, the statute extends to all federal property, and not merely the courthouse.  In light of this, a substantial amount of speech is implicated and therefore 41 C.F.R. § 102-74.390(a) should be invalidated.

Furthermore, subsection (c) of 41 C.F.R. § 102-74.390 implicates verbal expression to police officers to the same if not

more than, the statute at issue in <u>Hill</u>.  While that statute, in a content-neutral manner, prohibited speech which opposed, molested, abused or interrupted a police officer in the official performance of his duties, subsection (c) prohibits speech that disrupts or impedes a federal officer's duties.  Surely "disrupts" encompasses more behavior (and accordingly more speech) than the laundry list involved in <u>Horton</u>.

"The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  <u>Houston</u>, 482 U.S. at 462-63.  For the same reason, 41 C.F.R. § 102-74.390(c) should be struck as overbroad.

Dated:  This 25th day of May, 2005.

Respectfully submitted,

<u>s/ Regina Cannon Stephenson</u>
REGINA CANNON STEPHENSON
GEORGIA STATE BAR NO. 679569
ATTORNEY FOR RODNEY RICHARDSON

Federal Defender Program, Inc.
Suite 1700, The Equitable Building
100 Peachtree Street, N.W.
Atlanta, Georgia  30303
404-688-7530; 404-688-0768 Fax
regina_stephenson@fd.org

CERTIFICATE OF SERVICE

I hereby certify that the foregoing MR. RICHARDSON'S APPEAL OF THE MAGISTRATE ORDER RE:  PROBABLE CAUSE AND CONSTITUTIONALITY OF 41 C.F.R. §102-74.390 was formatted in Courier 12 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following Assistant United States Attorney of record:

> Katherine Monahan, Esq.
> Assistant United States Attorney
> 500 Richard B. Russell Building
> 75 Spring Street, S.W.
> Atlanta, Georgia  30303

Dated:  This 25th day of May, 2005.

> *s/ Regina Cannon Stephenson*
> REGINA CANNON STEPHENSON
> GEORGIA STATE BAR NO. 679569
> ATTORNEY FOR RODNEY RICHARDSON

Federal Defender Program, Inc.
Suite 1700, The Equitable Building
100 Peachtree Street, N.W.
Atlanta, Georgia  30303
404-688-7530; 404-688-0768 Fax
regina_stephenson@fd.org